# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**GERALD K. HAINES,**

         Plaintiff,

   v.

**NANCY A. BERRYHILL,**[1]
Commissioner of Social Security,

        Defendant.

Case No. 6:17-cv-30-SI

**OPINION AND ORDER**

Katherine Tassinari, and Robert Baron, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette St., Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney; UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Heather L. Griffith, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Gerald Haines seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Supplemental

Security Income ("SSI"). Because the Commissioner's decision was not based on the proper

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the Defendant in this suit.

legal standards and the findings were not supported by substantial evidence, the decision is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The District Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Molina v. Astrue*, 673 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* at 1110-11 (quotation omitted). The Court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.* at 1110. The Court may not substitute its judgment for that of the Commissioner. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### A.    Plaintiff's Application

Born in May 1964, Mr. Haines was 31 years old on the alleged disability onset date and 50 years old at the time of the administrative hearing. AR 87-88. He speaks English, and indicated he obtained his GED in 1994. AR 189. He alleges disability due to PTSD, depression, anxiety, and seizure disorder. AR 88.

Mr. Haines previously received SSI benefits following a fully favorable administrative law judge ("ALJ") decision on December 15, 2006, in which a prior ALJ found Mr. Haines

disabled based on dysthymia, posttraumatic stress disorder ("PTSD"), and personality disorder, beginning August 27, 1999. Tr. 265-69. Mr. Haines' benefits were terminated when he was incarcerated for 34 months following a domestic violence conviction. Tr. 47-48; *see* 20 C.F.R. §§ 416.1325, 416.1335. Mr. Haines filed a new application for SSI in October 2012, alleging disability onset on September 15, 1995. AR 87. The application was denied initially and on reconsideration, and Mr. Haines timely requested a hearing before an ALJ which was held on January 22, 2015. AR 42-85. After the hearing, ALJ John Michaelson found Mr. Haines not disabled in a decision dated April 9, 2015. AR 19-35. That decision became the final decision of the Commissioner when the Appeals Council denied his request for review. Tr. 1-3. Mr. Haines now seeks review in this Court.

**B.    The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 419.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.     The ALJ's Decision

The ALJ performed the sequential analysis. At step one, the ALJ found Mr. Haines had not engaged in substantial gainful activity since October 31, 2012, his application date. AR 21. At step two, the ALJ concluded that Mr. Haines had the following severe impairments: history of PTSD with anxiety and depression. *Id.* At step three, the ALJ determined that Mr. Haines did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 22. The ALJ next assessed Mr. Haines' RFC and found that he could perform a full range of work at all exertional levels with the following non-exertional limitations: "[he] would need to avoid concentrated exposure to unprotected heights, moving machinery, and similar hazards . . . [and] is also limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors, co-workers, and the general public." AR 24. At step four, the ALJ found that Mr. Haines did not have any past relevant work. AR 34. At step five, the ALJ concluded that Mr. Haines could perform jobs that exist in significant numbers in the national economy, including battery stacker, scrap sorter, and hand packager. *Id.* Accordingly, the ALJ found Mr. Haines not disabled. AR 35.

**DISCUSSION**

Mr. Haines contends the ALJ made the following legal errors in evaluating his case: (a) failing to properly develop the record regarding his mental impairments; (b) failing to provide legally sufficient reasons to discredit his symptom testimony; and (c) improperly discrediting testimony from a lay witness.

**A.      ALJ's Duty to Develop the Record**

An ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." *Celeya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014). Although Mr. Haines was represented by counsel at his administrative hearing, he nevertheless argues that the ALJ erred by failing to develop the record because the ALJ did not order neuropsychological assessment. Pl.'s Br. 8-9. Mr. Haines argues that several factors mitigate in favor of the need for neuropsychological testing on this record: first, his previous benefits were terminated due to the length of his incarceration, rather than an improvement in his condition; second, a prior ALJ awarded benefits, in part, because "multiple medical providers . . . indicated that Mr. Haines was unable to work competitively"; third, because the consultative psychologist of record in Mr. Haines' instant claim recommended additional "personality testing"; and finally, because evidence of record demonstrates severe mental impairments, including low scores for Global Assessment of Functioning ("GAF") and a mental residual functional capacity assessment accepted into the record by the Appeals Council that the ALJ did not consider. *Id.*

The Commissioner argues that, as a threshold matter, Mr. Haines' argument is inapposite because the issue of additional neuropsychological testing was not raised at the administrative

hearing: "[b]y not arguing to the agency that the record needed further development . . . Plaintiff implicitly took the position at the hearing that the record was sufficiently developed . . . ." Def.'s Br. 4 (citing *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended)). In *Meanel*, the claimant's counsel did not provide vocational statistical evidence to the ALJ or Appeals Council, and the Ninth Circuit determined that because Meanel was represented by counsel, he therefore waived introduction of that evidence. *Id.*

      Recent Ninth Circuit decisions, however, have taken a somewhat more lenient approach. For example, a recently published decision found that although the claimant did not raise an issue regarding an apparent conflict between VE testimony and jobs described in the *Dictionary of Occupational Titles* ("*DOT*"), the claimant was allowed to raise the issue, in part, because he raised it to the Appeals Council. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017). The *Lamear* court implied that even if the plaintiff had not raised the issue at the Appeals Council, it could be raised at the district court: "*more importantly*, our law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent [evidentiary] conflicts . . . ." *Id.* (citing *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015)) (emphasis added). On the other hand, the Ninth Circuit also recently held that although an ALJ is required to inquire about an apparent conflict between a VE's testimony and the *DOT* whether or not a claimant raises the issue, the duty does not extend to apparent conflicts with other vocational publications. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2017). The *Shaibi* court further noted that another case cited by Mr. Haines, *Sims v. Apfel*, 530 U.S. 103, 112 (2000), did not apply because *Sims* dealt only with the issue of whether a claimant must present all relevant issues to the Appeals Council, rather than the ALJ, in order to preserve them. *Shaibi*, 883 F.3d at 1109.

Based on the entirety of the record, including Mr. Haines' prior ALJ decisions and in particular the "fully favorable" decision of December 15, 2006, the Court finds the issues presented in *Meanel*, *Lamear*, and *Shaibi* distinguishable from the case at bar. These cases dealt with a commonly litigated issue in SSA litigation: whether the ALJ properly resolved a conflict between VE testimony and the *DOT*. Here, the crux of the request to further develop the record is quite different.

During the hearing, it became apparent that the ALJ had not reviewed the medical records that provided the basis for the 2006 decision finding Mr. Haines disabled. *See* AR 82-84. The ALJ indicated that the Social Security Administration ("SSA") had attempted, but was unable, to "access" the records. AR 82. The ALJ further indicated that he would "look into" whether a formal attempt had been made to obtain the records, and agreed to hold the record open for 15 days, although the medical records in question were never located. AR 83-84, 270.

In the December 15, 2006 decision awarding SSI benefits, the prior ALJ determined that Mr. Haines's had the severe impairments of dysthemia, PTSD, and personality disorder with antisocial and dependent features, and that his symptoms met or equaled three separate listings: §§ 12.04 (depressive disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders). AR 267-68; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The prior ALJ found that Mr. Haines had been disabled since 1999; that "numerous psychiatric/psychological evaluations were undertaken and the highest global functioning achieved by Mr. Haines was 50, which indicated a serious impairment in social, occupational, or school functioning;" and that "his symptoms were assessed to be chronic and severe enough to account for his failure to do well in the workplace." AR 268. Notably, the 2006 decision's ALJ

indicated that she had "adopted the essential narrative of the first [2005] [ALJ] decision issued in this case, but . . . reached a different conclusion." AR 268.

The ALJ in the instant matter acknowledged that the 2006 ALJ's decision was favorable, but explained at the hearing that although the prior ALJ incorporated the 2005 decision's narrative, he did not have access to the first decision, and as noted above, was unable to obtain the relevant medical records. AR 83. The 2005 decision, however, was made part of the record following the hearing, but prior to the instant ALJ's decision. AR 270, 281-95. The 2005 decision summarized medical records reflecting significant mental health treatment for diagnoses including PTSD, panic disorder, dysthymic disorder, personality disorder, and various substance addictions. *See* AR 284-90. Despite those findings, the instant ALJ did not describe the nature of the evidentiary record in the 2005 or 2006 decision, other than to note Mr. Haines' condition improved "when he went to jail and became sober from multiple substances," and that he would have liked to reopen the 2006 decision and deny benefits. AR 30. However, the ALJ overlooked the fact that the 2006 ALJ found Mr. Haines was not using substances at the time of her decision, as evinced by "numerous [urinalysis] studies which returned negative for all drugs." AR 268.

Accordingly, the instant ALJ had notice, prior to his decision, that Mr. Haines was previously adjudged to meet or equal three separate listings, including Listing 12.08 for personality disorder. Despite such notice, the ALJ disregarded without comment the opinion of consultative psychologist Jennifer Metheny, Ph.D., who recommended further personality testing because she felt "there may also be personality factors involved," in addition to her diagnoses of PTSD and depression. AR 351-52. Dr. Metheny also opined that the basis of her PTSD diagnosis was Mr. Haines' symptoms of angry outbursts, difficulty concentrating, and hypervigilance, which caused him "clinically significant distress." AR 351. The ALJ purported to accord

Dr. Metheny's opinion "significant weight," but it appears he did so only insofar as the doctor assessed "mild to moderate issues with concentration and some difficulty with delayed recall," in a mental status exam. AR 32 (internal quotation marks omitted), 351.

Thus, the instant case presents a unique amalgam of circumstances—the 2006 ALJ decision granting benefits, Mr. Haines' subsequent incarceration, the SSA's inability to locate the prior medical evidence, the instant ALJ's assertion that he did not read the 2005 ALJ decision which provided the basis for the 2006 decision, and Dr. Metheny's recommendation for further testing—which, in combination, strongly suggests that the record was not sufficiently developed. Whereas the *Meanel* court imposed the waiver rule because Meanel did not raise the issue of sufficiency of the evidence at the ALJ hearing or to the Appeals Council, Mr. Haines' counsel repeatedly requested the ALJ attempt to obtain the missing medical records of the prior favorable decision. *Supra.* Mr. Haines' counsel also provided the ALJ with the written decision of the prior 2005 denial, as well as other documents related to the earlier claim. AR 270. Further, Mr. Haines' counsel submitted new evidence material to Mr. Haines' mental impairments post-hearing, which were incorporated into the record by the Appeals Council. *See* AR 2, 432-36; *see also Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Accordingly, although Mr. Haines' counsel did not explicitly request a neuropsychological examination before the ALJ or the Appeals Council, he adequately preserved the issue that the record was inadequate as to Mr. Haines' mental impairments by repeatedly requesting that the ALJ attempt to locate the missing medical records, and then by providing a supplemental mental assessment to the Appeals Council. *See Sims*, 530 U.S. at 111; *Lamear*, 865 F.3d at 1206.

The Commissioner further contends that even if the issue was not waived, the ALJ had no duty to obtain an additional examination, as the record was not ambiguous or inadequate to allow

for a proper evaluation. Def.'s Br. 4. In support, the Commissioner maintains that the medical opinions of record did not opine that Mr. Haines was more limited than the ALJ determined. The Court disagrees. Although treating physician Mary Pugsley, M.D., provided an opinion which stated Mr. Haines was on an "effective combination" of medications, the statement must be read in context: the opinion was provided in support of Mr. Haines' request for special accommodations for his mental impairments. AR 368-69; *see, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (medical source statements should be read in the context of the overall diagnostic picture). Thus, even if his medications were "effective," the doctor still requested he be allowed to sit near a doorway. Although the ALJ found that such an accommodation did not "offer additional restrictions" beyond the RFC, the allowance to leave the classroom due to panic attacks or other PTSD symptoms is certainly similar to the "unscheduled breaks" in a workplace environment, a limitation which the ALJ did not include in Mr. Haines' RFC.

Further, for the reasons stated above, although the ALJ purported to accord Dr. Metheny's medical assessment significant weight, he failed to adopt the doctor's recommendation to seek further evaluation of Mr. Haines' potential personality disorder, despite a prior ALJ's finding that he was presumptively disabled based on meeting or equaling Listing 12.08. Finally, the Court notes that Russell Geoffrey, M.D. diagnosed Mr. Haines with "cognitive disorder, NOS" in August 2014, which the ALJ appears to have overlooked, as he did not comment on the diagnosis in his decision. AR 28, 389.

The post-hearing evidence also supports the need for further evaluation of Mr. Haines' mental impairments. Following two months of counseling, licensed professional counselor ("LPC") Brad Sigafoose submitted a mental RFC worksheet which was accepted into the record

by the Appeals Council. Mr. Sigafoose indicated that Mr. Haines had numerous marked limitations in sub-categories of the following areas: sustained concentration and persistence, social interaction, and adaptation. AR 432-36. Mr. Sigafoose noted that in addition to PTSD, Mr. Haines has panic disorder with agoraphobia. Although Mr. Sigafoose is not an "acceptable medical source" under the regulations, his opinion "may, under certain circumstances, properly be determined to outweigh the opinions from a medical source," including the reviewing agency physicians. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). The opinion of Mr. Sigafoose supports Mr. Haines' contention that the ALJ's development of the record was incomplete, as it stands in stark contrast to the minimal mental limitations set forth by the agency reviewing physicians. Accordingly, although the Commissioner's contention that no medical source opined that Mr. Haines' was more limited than the ALJ found is technically accurate, Mr. Sigafoose's opinion is nevertheless relevant.

The Court acknowledges that the SSA is not required to bear the expense of a consultative examination for every claimant. "Some kinds of cases, however, do normally require a consultative examination, including those in which additional evidence needed is not contained in the records of the claimant's medical sources." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citation and internal brackets and quotation marks omitted). Based on the totality of unique circumstances in this case, the record was incomplete at the time of the decision. The Court agrees with Mr. Haines that the appropriate remedy is to remand this case for further development of the record, including a new neuropsychological examination (or examinations) to screen Mr. Haines for any personality and cognitive disorders.

**B.      Subjective Symptom Testimony**

There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ provided a list of inconsistencies between Mr. Haines' statements at hearing, and his prior reports to treatment providers and those in his application materials. On review, the Court finds that while some of the rationales provided pass muster under the rigorous clear-and-convincing legal standard, others were insufficient.

For example, the ALJ found that although Mr. Haines indicated he took a benzodiazepine (clonazepam) for an alleged seizure disorder, his prescriber indicated he took alprazolam and clonazepam for chronic anxiety. The ALJ did not acknowledge that in the 2006 decision, the ALJ noted that, "evidence shows that in addition to Depakote, he was being prescribed [alprazolam] for a seizure disorder." AR 268. However, to the extent the ALJ noted the inconsistency as grounds to reject Mr. Haines' allegations of an ongoing seizure disorder, the ALJ's interpretation of the evidence was rational and based on substantial evidence, and is therefore affirmed. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (ALJ's decision should be upheld even where it is susceptible to more than one rational interpretation).

The ALJ also found that Mr. Haines' reports of panic attacks were inconsistent with his ability to attend community college five days per week, which involves riding a public bus. AR 29. Contrary to the ALJ's assertion that the record contains no evidence to corroborate his panic attack allegations, however, his case manager at the post-incarceration reentry services noted that Mr. Haines had unusual behavior and fears, is easily overwhelmed, handles stress poorly, and tends to withdraw from people. AR 235. Also, Mr. Haines told Dr. Metheny that he has great difficulty taking the bus because he has panic attacks around others, and expressed to

the ALJ that he copes with riding the bus each day by heavily medicating himself. AR 67. As such, the ALJ's finding was not clear and convincing.

The ALJ found that Mr. Haines' credibility was diminished because he told a counselor that he takes citalopram irregularly because it interfered with his sexual performance, while he told his primary care provider that he took it regularly. AR 29-30. It indeed appears that Mr. Haines has provided different providers different information about whether he takes citalopram for depression regularly or intermittently, and there is evidence of record that he has not taken citalopram consistently, which could account for some of his symptom allegations. *See* AR 30. The ALJ's finding was not erroneous.

The ALJ determined that Mr. Haines' provided inconsistent reports about whether his benzodiazepine use caused side effects. AR 29. At the hearing, Mr. Haines told the ALJ that his side effects included confusion, exhaustion, and unclear thinking, which he experienced "all the time." AR 63. However, Mr. Haines did not report the side effects of confusion, exhaustion, or unclear thinking to providers or in his application materials. *See*, *e.g.*, AR 22 (listing only citalopram as causing sexual side effects). While the Court acknowledges the discrepancy, it is unclear that Mr. Haines ever alleged that confusion, exhaustion, or unclear thinking affected his ability to perform work activity. Accordingly, the ALJ did not err in identifying the inconsistency.

The ALJ also opined that there was evidence of secondary gain motivation based on the purported discrepancy between Mr. Haines' report to the SSA that his depression had worsened in 2013, and his contemporaneous report to a provider that he had gone on a fishing trip with his case manager, and reported no increase in depressive symptoms. AR 29, 358. Indeed, Mr. Haines did not report any increase in depression symptoms at the May 2013 clinical visit despite telling

the SSA that his depression had significantly worsened in February 2013. Although Mr. Haines argues that his symptoms improved during the fishing trip, the ALJ did not err to find his statements inconsistent. *Burch*, 400 F.3d at 680-81.

The ALJ also noted secondary gain motivation was evinced by Mr. Haines' reports of suicidal ideation to the SSA in May 2013. AR 29. The ALJ found the reports were not credible because Mr. Haines told Dr. Metheny he only occasionally had suicidal thoughts. AR 245, 351. On balance, the Court does not discern a material difference between Mr. Haines' reports to the SSA and Dr. Metheny about the frequency of his suicidal thoughts. The ALJ further found that Mr. Haines' allegation was further belied by his failure to seek psychiatric treatment from May 2013 until July 2014. AR 29. However, the record reflects that Mr. Haines had a counseling session during that time period, wherein he indicated reluctance to sign a release of information because he feared his prescriber would discontinue his benzodiazepines if he learned of Mr. Haines' suicidal ideation. AR 375. As such, the record reflects that Mr. Haines had suicidal ideation during that time period, contrary to the ALJ's finding. The finding was erroneous.

The ALJ additionally found that Mr. Haines' credibility was undermined by his sporadic work history coupled with his ability to work during his incarceration. The finding is not clear-and-convincing: Mr. Haines was previously found disabled by an ALJ from 1999 through 2010. Subsequently, he was incarcerated for nearly three years. AR 261. Although it appears Mr. Haines was able to perform some work while he was in prison, the ALJ failed to evaluate how often he worked, what the work entailed, and if he was able to perform his duties successfully. Although the Court acknowledges the Commissioner's contention that his ability to perform some work suggests he is capable of more, the contention is mitigated by the fact that claimants with mental impairments often function better in highly-controlled settings, and such

improvement may not be transferable to a normal workplace. *See, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Accordingly, the ALJ's finding was not clear-and-convincing.

Finally, the ALJ noted that Mr. Haines' activities of daily living demonstrated that he was not as limited as he alleged. AR 30. The ALJ noted that Mr. Haines' endorsed the ability to perform household chores, use public transit, watch television without problems in attention or concentration, attend one class per day, pay his rent monthly, and shop for himself. Although Mr. Haines has a different interpretation of the record, the ALJ's findings were specific, rational, and are supported by substantial evidence. The findings are, therefore, upheld. *Burch*, 400 F.3d at 680-81.

Overall, although not all of the ALJ's rationales for finding Mr. Haines' symptom allegations met the clear-and-convincing legal standard, the ALJ nonetheless provided sufficient reasons to support his overall credibility determination. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (holding that although the ALJ's credibility determination included invalid findings, the finding that Carmickle was less than fully credible overall remained valid).

## C.      Lay Witness Testimony

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to

those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Mr. Haines assigns error to the ALJ's evaluation of Tony Meyer, his former case manager at a post-incarceration reentry services provider in Eugene, Oregon. *See* AR 33, 229-36. The ALJ implied that Mr. Meyer's assessment was not probative because he only knew Mr. Haines for four months. AR 33. However, as a case manager, Mr. Meyer had intensive exposure to Mr. Haines for nearly two months – eight hours per day, four days per week. AR 229. Such an intense period of contact likely provided Mr. Meyer an excellent opportunity to observe Mr. Haines' functional limitations during that time period. Accordingly, it was error for the ALJ to summarily dismiss Mr. Meyer's statements based on the duration of contact. The

ALJ's only other express finding was that Mr. Meyer's statement that Mr. Haines was "frustrated he cannot afford haircuts" was inconsistent with Mr. Haines' report that "he requires reminders for haircuts." AR 33, 223, 230. To the extent the statements were even arguably inconsistent, the inconsistency is too minor to sustain the ALJ's wholesale rejection of Mr. Meyer's lay testimony. On remand, the ALJ must reevaluate Mr. Meyer's statements based on the record as a whole.

**D.     Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the

district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimant's allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

For the reasons described herein, the ALJ's decision included reversible errors. However, because the record is not adequately developed in this case as to the extent and severity of Mr. Haines' mental impairments, further proceedings are required. Specifically, the SSA shall provide adequate consultative examination to thoroughly assess Mr. Haines' mental impairments, including any personality or cognitive disorders which may affect his ability to satisfactorily perform in a regular work setting. Further, the ALJ must reevaluate the written statements provided by lay witness Tony Meyer and provide legally sufficient reasons for rejecting them, if applicable.

**CONCLUSION**

The Commissioner's decision is not based on proper legal standards or supported by substantial evidence. Therefore, Mr. Haines' request for remand (Dkt. 1) is GRANTED. The Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

DATED this 27th day of March, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge